**Martin Edward LEWIS, Plaintiff,**

v.

**Henry P. RUSSE, M.D., Rush Medical College, Rush–Presbyterian–St. Luke's Medical Center, Defendants.**

No. 88 C 8684.

United States District Court,
N.D. Illinois, E.D.

May 26, 1989.

Martin Edward Lewis, pro se.

George F. Galland, Jr., Mark Kende, Davis, Barnhill & Galland, Chicago, Ill., for defendants.

## ORDER

BUA, District Judge.

In his pro se complaint, plaintiff alleges that racial animus motivated defendants to dismiss him from medical school. Plaintiff seeks compensatory and punitive damages as well as injunctive relief. He also moves for the appointment of counsel. In response to this lawsuit, defendants move for dismissal of plaintiff's complaint or, alternatively, for summary judgment on plaintiff's claims. After reviewing defendants' arguments, this court dismisses plaintiff's claims under 42 U.S.C. § 1983 and Title VII; but the court denies defendants' motion for pretrial disposition of plaintiff's claims under 42 U.S.C. § 1981 and Title VI. Now that some of plaintiff's claims have survived a motion to dismiss, the court grants plaintiff's motion for appointment of counsel.

## FACTS

Defendant Rush–Presbyterian–St. Luke's Medical Center ("Rush–Presbyterian") owns and operates defendant Rush Medical College, an accredited medical school located in Chicago. Established in 1969 as a private institution, Rush Medical College

maintains no affiliation with the State of Illinois.

Plaintiff Martin Lewis, who is black, enrolled at Rush Medical College in the fall of 1983. During the period of Lewis' matriculation, the school permitted its students to rectify any course failures by taking makeup examinations. Under this makeup policy, however, each student could only take two makeup exams per quarter. Because Lewis failed more than two courses in each of his first three quarters, the school's makeup policy precluded him from expunging all failing grades from his record. School officials strictly enforced the makeup policy in Lewis' case, denying his request to take additional makeup exams. Lewis alleges, however, that the school exempted white students from the restrictions imposed by the makeup policy. According to Lewis, certain white students in his class received permission to take extra makeup exams in order to purge their records of any failures.

At the conclusion of the 1983–84 school year, Lewis' academic record at Rush Medical College included several failures. Based on these failures, the school's Committee on Student Evaluation and Promotion ("COSEP") recommended that Lewis repeat his entire first year, including the courses he had already passed. Acting on COSEP's recommendation, defendant Henry P. Russe, M.D., the school's dean, required Lewis to retake the full first-year curriculum during the 1984–85 school year. Dr. Russe imposed this same requirement on two of Lewis' classmates, a black man and a woman of Arab descent.

In his second attempt to satisfy the first-year academic requirements, Lewis failed several courses. Following the 1984–85 school year, COSEP held a hearing to determine whether Lewis should remain enrolled at Rush Medical College. After hearing Lewis' testimony, COSEP voted to recommend Lewis' dismissal. Lewis then appealed to the Faculty Council, which voted unanimously to uphold COSEP's recommendation. Dr. Russe concurred in the recommendations of COSEP and the Faculty Council. Citing Lewis' deficient academic record, Dr. Russe officially dismissed Lewis from Rush Medical College in a letter dated September 9, 1985.

Meanwhile, at the time Lewis appealed COSEP's recommendation to the Faculty Council, he also filed a complaint with the U.S. Department of Education. In this complaint, Lewis alleged that Rush Medical College had discriminated against him on the basis of his race. After investigating Lewis' complaint, the Education Department's Office for Civil Rights ("OCR") concluded in December 1985 that Lewis' claim of racial discrimination lacked any foundation.

During the next three years, Lewis repeatedly but unsuccessfully petitioned Dr. Russe for readmission to medical school. Then in September 1988, Lewis filed suit in federal court against Dr. Russe, Rush Medical College, and Rush–Presbyterian.

## DISCUSSION

I. Defendants' Motion to Dismiss or for Summary Judgment

In addition to invoking the Fifth and Fourteenth Amendments, Lewis bases his pro se complaint on the Civil Rights Acts of 1866, 1870, and 1964. These statutes provide four potential jurisdictional bases for Lewis' claims: 42 U.S.C. § 1983, Title VII, 42 U.S.C. § 1981, and Title VI. Defendants contend that Lewis cannot maintain a claim under any of these four statutory provisions. In order to evaluate defendants' motion for dismissal or summary judgment, this court must examine each of the possible jurisdictional foundations for Lewis' claims.

### A. 42 U.S.C. § 1983

To state a § 1983 claim, Lewis must allege an infringement of his constitutional rights. He attempts to fulfill this requirement by asserting that defendants violated his rights under the Fifth and Fourteenth Amendments. Although these constitutional provisions do not prohibit private acts of discrimination, Lewis makes no effort to establish state or federal participation in defendants' allegedly discriminatory conduct. In fact, he baldly asserts

**1230**

that the absence of state action in his case should not diminish the vitality of his due process and equal protection claims. This argument ignores more than a century of Supreme Court precedent. The Due Process Clause of the Fifth Amendment applies only to the federal government and its agents. *Public Utilities Commission v. Pollak,* 343 U.S. 451, 461, 72 S.Ct. 813, 820, 96 L.Ed. 1068 (1952); *Barron v. Mayor of Baltimore,* 32 U.S. (7 Pet.) 243, 250–51, 8 L.Ed. 672 (1833). Similarly, the Fourteenth Amendment, which limits the power of the states, does not restrict the activities of private citizens. *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172, 92 S.Ct. 1965, 1971, 32 L.Ed.2d 627 (1972); *Shelley v. Kraemer,* 334 U.S. 1, 13, 68 S.Ct. 836, 842, 92 L.Ed. 1161 (1948); *Civil Rights Cases,* 109 U.S. 3, 11–13, 3 S.Ct. 18, 21–23, 27 L.Ed. 835 (1883). In the instant case, Lewis complains of private discrimination, not governmental misconduct. Therefore, his allegations provide no basis for a constitutional claim under § 1983.

### B. Title VII

■ Although Lewis seeks relief under the Civil Rights Act of 1964, Title VII of that statute offers him no remedy. Title VII outlaws racial discrimination solely in the employment context. 42 U.S.C. § 2000e. Because Lewis does not allege that he ever worked for defendants, he cannot maintain a Title VII claim.

### C. 42 U.S.C. § 1981

■ Like Title VII, § 1981 proscribes private racial discrimination. *Runyon v. McCrary,* 427 U.S. 160, 168–75, 96 S.Ct. 2586, 2593–2597, 49 L.Ed.2d 415 (1976). Unlike Title VII, however, § 1981 applies to a variety of contexts: "The section speaks not only of personal rights to contract, but personal rights to sue, to testify, and to equal rights under all laws for the security of persons and property...." *Goodman v. Lukens Steel Co.,* 482 U.S. 656, 661, 107 S.Ct. 2617, 2621, 96 L.Ed.2d 572 (1987). Given its applicability to private conduct and its relatively broad scope, § 1981 would appear to supply a solid foundation for Lewis' discrimination claim.

Defendants contend, however, that Lewis did not assert a timely claim under § 1981. In *Goodman v. Lukens Steel Co., supra,* the Supreme Court ruled that federal courts should apply the state statute of limitations for personal injury actions when considering the timeliness of § 1981 claims. Defendants urge this court to examine Lewis' lawsuit through the lens provided by *Goodman.* Illinois law imposes a two-year statute of limitations on personal injury suits. *See* Ill.Rev.Stat. ch. 110, para. 13–202 (1987). Lewis filed suit in October 1988, more than three years after his cause of action accrued. Therefore, if the court applied *Goodman* to Lewis' case, the statute of limitations would bar Lewis' § 1981 claim.

Defendants concede that the Supreme Court decided *Goodman* after Lewis' cause of action had accrued. Nonetheless, defendants argue that the court should retroactively apply the limitations period prescribed by *Goodman.* In arguing for retroactivity, defendants overlook the clear Seventh Circuit precedent that *Goodman* overruled. In 1970, the Seventh Circuit established a five-year statute of limitations for § 1981 claims. *See Waters v. Wisconsin Steel Works,* 427 F.2d 476 (7th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970). As defendants correctly observe, the Supreme Court held in 1985 that the state statute of limitations for personal injury actions governs § 1983 claims. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985). Contrary to defendants' assertion, however, the *Wilson* ruling did not cast doubt on the continuing validity of the Seventh Circuit's five-year limitations period for § 1981 claims. In fact, in 1986, the Seventh Circuit explicitly rejected an invitation to extend the *Wilson* rationale to § 1981 claims. Instead, the Court of Appeals continued to apply the five-year statute of limitations created by *Waters. See Nazaire v. Trans World Airlines, Inc.,* 807 F.2d 1372, 1380 & n. 5 (7th Cir.1986), *cert. denied,* 481 U.S. 1039, 107 S.Ct. 1979, 95 L.Ed.2d 819 (1987).

■ When a newly established statute of limitations overrules clear precedent on which litigants may have relied, a court should not apply the new limitations period retroactively. *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Anton v. Lehpamer*, 787 F.2d 1141 (7th Cir.1986). The Supreme Court did not act in a vacuum when it decided *Goodman*. That decision overturned the five-year statute of limitations that the Seventh Circuit had enforced for nearly 20 years. For this reason, the court declines to apply *Goodman* retroactively.[1] In order to assess the timeliness of Lewis' § 1981 claim, this court must apply the five-year limitations period in effect at the time defendants dismissed Lewis from medical school. Because Lewis filed suit within five years after his cause of action accrued, the court concludes that Lewis' § 1981 claim is not time-barred.

In addition to questioning the timeliness of Lewis' complaint, defendants challenge Lewis' § 1981 claim on substantive grounds. Defendants argue that OCR's rejection of Lewis' racial discrimination claim entitles them to summary judgment in this lawsuit. Acceptance of this argument would transform OCR and other administrative agencies into tribunals of last resort for victims of racial discrimination. This court has no intention of denying Lewis access to federal court simply because OCR denied his claim. Before granting summary judgment for defendants, the court must examine Lewis' allegations to determine if a genuine issue of material fact exists.

■ When considering the sufficiency of a pro se complaint, a court must apply less stringent standards than it uses to evaluate formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 595-596, 30 L.Ed.2d 652 (1972). Analyzing Lewis' complaint under this lenient standard, this court finds that the complaint states a claim under § 1981. The court acknowledges that Lewis' complaint suffers from the defects typical of most pro se complaints. Many of Lewis' allegations are either irrelevant to this lawsuit or inadequate to state a claim. Nonetheless, despite its shortcomings, the complaint manages to make out a claim under § 1981. In an attachment to the complaint, a letter that Lewis wrote to an attorney he had previously retained, Lewis alleges that defendants strictly enforced the makeup policy in his case, but permitted white students to take more makeup tests than the makeup policy allowed. This allegation of unequal treatment raises a genuine issue of material fact, an issue that OCR did not even address when it rejected Lewis' claim. In light of the unresolved allegation of inequitable application of the makeup policy, this court cannot enter summary judgment for defendants with respect to Lewis' § 1981 claim.

### D. Title VI

■ Finally, Lewis attempts to assert a claim under Title VI of the Civil Rights Act of 1964, which prohibits racial discrimination in the administration of federally funded programs. *See* 42 U.S.C. § 2000d et seq. At the time of Lewis' dismissal from medical school, Title VI did not govern all of the actions of institutions that accepted federal largesse. Rather, the strictures of Title VI applied only to an institution's specific programs that received federal funds. *Grove City College v. Bell*, 465 U.S. 555, 104 S.Ct. 1211, 79 L.Ed.2d 516 (1984); *David K. v. Lane*, 839 F.2d 1265, 1275-76 (7th Cir.1988). Defendants argue that Lewis cannot maintain a Title VI action because he has not demonstrated that Title VI applies to the facts of his case. Specifically, defendants contend that Lewis has failed to allege and prove any nexus between federal funding and Rush Medical College's academic program. Admittedly,

---

1. Faced with the same retroactivity issue in previous cases, this court and others have consistently refused to apply a two-year statute of limitations to § 1981 claims that were filed before *Goodman* was decided. *See, e.g., Rick Nolan's Auto Body Shop, Inc. v. Allstate Insurance Co.*, 711 F.Supp. 475 (N.D.Ill.1989); *Malhotra v. Cotter & Co.*, 696 F.Supp. 1203, 1207-08 (N.D.Ill. 1988); *Smith v. Firestone Tire & Rubber Co.*, 675 F.Supp. 1134, 1136-37 (C.D.Ill.1988); *Comer v. Interstate United Corp.*, 118 F.R.D. 79, 84-85 (N.D.Ill.1987).

Lewis has not yet conclusively proven that the program in which he participated received federal money. At this early stage of the litigation, however, Lewis need only allege that the program benefited from federal funding. Examining Lewis' pleadings under the liberal standard of review for pro se complaints, this court concludes that Lewis has adequately alleged the applicability of Title VI to his case. Lewis attached a copy of the OCR report to his complaint. OCR's investigation of Lewis' claim proceeded on the assumption that defendants were subject to the requirements of Title VI. Thus, the OCR report raises a legitimate question as to whether defendants had to comply with Title VI when they dismissed Lewis from medical school.[2] Ultimately, before he can prevail on a Title VI claim, Lewis must establish a connection between federal funds and the program from which he was dismissed. For the moment, however, Lewis has averted dismissal of his Title VI claim by alleging that Title VI applies to his case.

■ Nonetheless, even assuming that the academic program at Rush Medical College received federal funds, defendants aver that Lewis cannot proceed under Title VI because he has not filed a timely claim. Defendants maintain that the two-year statute of limitations for personal injury actions should apply to Lewis' Title VI claim. Essentially, defendants ask this court to extend the Supreme Court's rulings in *Wilson* and *Goodman* to the context of Title VI. The court declines to do so. In *Beard v. Robinson*, 563 F.2d 331, 336 (7th Cir.1977), *cert. denied*, 438 U.S. 907, 98 S.Ct. 3125, 57 L.Ed.2d 1149 (1978), the Seventh Circuit established a five-year statute of limitations for all actions brought under the Civil Rights Acts. Until the Supreme Court explicitly defines a limitations period for Title VI actions, or until the Seventh Circuit overturns *Beard*, the statute of limitations adopted by *Beard* shall continue to govern Title VI claims presented to this court. Applying *Beard*'s five-year statute to the instant case, the court concludes that Lewis has filed a timely Title VI claim.

■ Turning to defendants' alternative motion for summary judgment, the court finds defendants' substantive attack on Lewis' Title VI action no more compelling than their procedural challenges to the Title VI claim. Based on OCR's conclusion that racial discrimination played no part in Lewis' dismissal from medical school, defendants contend that Lewis cannot state a claim under Title VI. The court has already rejected this identical argument with respect to Lewis' § 1981 claim. As the court discussed earlier in this opinion, OCR's findings do not mandate pretrial disposition of Lewis' claim of racial discrimination. The OCR report did not address all of Lewis' allegations concerning defendants' preferential treatment of white students with multiple failures. If he can prove these allegations, and if he can show that Title VI applies to defendants, then Lewis will have stated a claim under Title VI. Due to the prospect that Lewis may have a legitimate claim, the court must deny defendants' motion for summary judgment at this time.

## II. Lewis' Motion for Appointment of Counsel

■ Now that some of Lewis' claims have survived a motion to dismiss, the court grants Lewis' motion for appointment of counsel. Lewis' attorney will probably want to amend Lewis' complaint

---

2. Defendants assert that Judge McGarr already settled this issue in 1986 when he entered summary judgment for Rush–Presbyterian on a previous Title VI claim involving the academic program at Rush Medical College. *See Ward v. Rush–Presbyterian–St. Luke's Medical Center*, No. 85 C 4646, 1986 WL 7355 (N.D.Ill. June 25, 1986). The ruling in this prior case, however, does not completely foreclose the possibility that Title VI may govern Rush Medical College's academic program. In *Ward*, Judge McGarr simply concluded that the plaintiffs had not proven a sufficient link between federal funds and the program in question. Perhaps Lewis can succeed where the plaintiffs in *Ward* failed. Perhaps he can show that the academic program at Rush Medical College benefited from federal funding. Given this possibility, Lewis should at least receive the opportunity to prove that Title VI applies to the program from which defendants dismissed him.

in order to define the issues in this lawsuit more clearly. After discussing the case with Lewis, the attorney may also think of additional legal theories on which Lewis could base his claim. Lewis' lawyer may include these alternative theories in an amended complaint.

## CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss Lewis' claims under 42 U.S.C. § 1983 and Title VII. The court denies defendants' motion for dismissal or summary judgment with respect to Lewis' claims under 42 U.S.C. § 1981 and Title VI. Finally, the court grants Lewis' motion for appointment of counsel.

IT IS SO ORDERED.